**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOSEPH DOOR,

       Plaintiff,                            CASE NO. 05-73074
                                                          HON. LAWRENCE P. ZATKOFF

v.

CITY OF ECORSE and
LARRY SALISBURY, in his official
and individual capacity,

       Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 3, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I.  INTRODUCTION

This matter is before the Court on Defendants' Renewed Motion for Judgment as Matter of Law (Docket #31) and Plaintiff's Motion for Attorney Fees (Docket #35). The issues have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. LR 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendants' motion is DENIED and Plaintiff's Motion is GRANTED in part.

### II.  BACKGROUND

**A.  Factual Background**

This case involves a dispute between neighbors in the City of Ecorse. Plaintiff purchased his

home in 1996. At the time, the home was in need of substantial repairs. The home was built in the early 1900s and was, at all times, not in compliance with the City's zoning ordinances. As such, the home was considered a non-conforming use. Between the time of his purchase and the present, Plaintiff made substantial repairs to the home and brought it up to code. Eventually, Plaintiff sought to build an addition on to the home. After gaining the requisite permits and approvals from the City, Plaintiff built a 16 foot by 22 foot addition onto his garage.

In late 2003, Plaintiff, having recently divorced, decided to sell the house in Ecorse to move closer to his children. In order to sell the home, Plaintiff needed to obtain a certificate of occupancy from the City. Pursuant to the City's ordinances, Plaintiff was required to apply for a certificate of occupancy and undergo standard building code inspections before a new owner could occupy the home. In effect, these requirements imposed conditions on Plaintiff's ability to sell his house in that prospective buyers would not purchase a home that could not be occupied. Plaintiff passed all relevant inspections but was denied the certificate of occupancy by Ecorse. Plaintiff repeatedly petitioned the City for the certificate and was denied at all levels. Finally, Plaintiff brought his case to the Zoning Board of Appeals, the final decision maker in Ecorse on zoning issues. The Board denied Plaintiff his certificate.

As a result of not having a certificate of occupancy, Plaintiff was unable to sell his home. Plaintiff attributed the City's denials to his neighbor and Mayor of Ecorse, Defendant Salisbury. Plaintiff and Salisbury had a contentious relationship, including litigation over whether Plaintiff's house complied with Ecorse's zoning ordinances. Plaintiff alleged that Salisbury used his position as Mayor to cause the City's officials to deny his certificate of occupancy even though he had passed all inspections and was otherwise entitled to a certificate.

**B. Procedural Background**

Plaintiff filed his complaint on August 9, 2005, claiming violations of his substantive and procedural due process rights and alleging that Ecorse took his property without compensation. The City of Ecorse and Salisbury were named as defendants. A jury trial was held between January 9, 2007, and January 16, 2007, with the jury reaching a verdict on January 17, 2007. The jury found that both the City and Salisbury violated Plaintiff's substantive due process rights by denying him his certificate of occupancy. The jury awarded Plaintiff compensatory damages in the amount of $22,000 against Ecorse and Salisbury, and punitive damages in the amount of $55,000 against Salisbury. Following the trial, Defendants' renewed their Motion for Judgment as a Matter of Law and, alternatively moved for a new trial. Plaintiff has filed a motion for attorney's fees.

### III.  LEGAL STANDARDS

Judgment as a matter of law is appropriate where, after a party has been fully heard on an issue, there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 236 (6th Cir. 2003). When reviewing a motion for a judgment as a matter of law based on insufficiency of the evidence, the court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury; rather, it must view the evidence in a light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). The motion should be granted "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 426-27 (6th Cir. 2004) (quoting *LaPerriere v. Int'l Union UAW*, 348 F.3d 127, 132 (6th Cir. 2003)).

3

Rule 59(a) of the Federal Rules of Civil Procedure states: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States ...." The Supreme Court has stated that the authority to grant new trials under Rule 59(a) "is large" and that authority to grant a new trial exists "if the verdict appears to [the judge] to be against the weight of the evidence." *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996). Nonetheless, the motion should be denied if the verdict is one which could reasonably have been reached; and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001).

## IV.  ANALYSIS

### A.  Defendants' Renewed Motion for Judgment as a Matter of Law

Defendants argue that Plaintiff failed to show evidence of a practice or custom sufficient to impose liability on the City of Ecorse; that Plaintiff failed to show Defendant Salisbury was acting under color of state law; that Plaintiff failed to prove damages caused by any deprivation of his rights; that the jury's award of punitive damages against Defendant Salisbury was unsupported by the evidence; and that the Court erred in allowing evidence of the parties' prior lawsuit. The Court finds that Plaintiff's evidence was sufficient to support the jury's verdict.

Plaintiff presented sufficient evidence for the jury to find the City of Ecorse liable. The jury was instructed that a practice or custom involves a "widespread course of conduct by municipal officials (or employees) that has become a traditional way of carrying out policy" and need not be a longstanding or regularly applied policy. *See* Jury Inst. at 29; *Monell v. Dept. of Social Services*

4

*of New York*, 436 U.S. 658, 690-91 (1978). Plaintiff testified that the City had approved all of his permits and the parties' stipulated that his home had passed its final inspection. Plaintiff presented testimony from former city inspectors that once Salisbury was elected Mayor in November 2003, he took it upon himself to change the way the City enforced its zoning code. Additionally, Salisbury testified to this himself, stating that he wanted strict enforcement. Furthermore, Salisbury hired a new building official to enforce the code the way he saw fit, specifically with regard to property setbacks. Finally, the testimony and documentary evidence demonstrated that Plaintiff was denied his certificate of occupancy because his property did not conform to setback requirements, even though the City had approved his building plans, and the Mayor's building official was the one who made the determination that Plaintiff's property was non-conforming. This is sufficient evidence for the jury to conclude that the a municipal policy of strict enforcement became the traditional way of enforcing the zoning code once Salisbury became Mayor, regardless of the City's prior decisions on zoning issues. Consequently, the Court cannot say that Plaintiff's evidence was inadequate to hold the City liable.

Further, Plaintiff presented evidence from which the jury could infer Defendant Salisbury was acting under color of state law. Salisbury was Mayor of the City of Ecorse at the time Plaintiff was attempting to sell his house. The jury was instructed that as Mayor, Salisbury was clothed with the state's authority. Furthermore, Salisbury's testimony indicated that he was directly involved with the City's affairs. Additional testimony indicated that Salisbury decided to strictly enforce the City's zoning ordinances and building codes and that he retaliated against inspectors who granted permits to Plaintiff. Finally, the jury was presented with exhibits indicating that the Mayor's office was involved with the grant or denial of zoning decisions.

In contrast, Defendants presented the testimony of Salisbury who stated that he had nothing to do with the decision to grant or deny Plaintiff his certificate of occupancy. Salisbury generally denied having any input in to whether buildings would be granted permits. However, the jury was free to disbelieve Salisbury's testimony in whole or in part. Thus, the Court cannot say that the evidence was such that no reasonable jury could find Salisbury was acting under color of state law.

Plaintiff presented sufficient evidence of damages. Plaintiff testified that he improved the home and that it was valued at $165,000. He also testified that he had a contract to sell the house for $165,000, and was prepared to close on the sale but, as a result of the City's refusal to grant the certificate of occupancy, was legally unable to complete the transaction. In addition, Plaintiff could not close a purchase agreement for another home for $120,000 that he desired in order to be closer to his children. Moreover, the officials who testified all indicated that they knew Plaintiff would not be able to sell his house without a certificate of occupancy. Thus, it was entirely foreseeable that Plaintiff would suffer damages as a result of being denied a certificate. Defendant presented no evidence to rebut this showing. Again, the Court cannot say that no reasonable jury could find that Plaintiff demonstrated his damages. Moreover, the Court will not inquire into how the jury calculated damages. *See* FED. R. EVID. 606(b).

Finally, Plaintiff presented sufficient evidence of Salisbury's malicious intent to support an award of punitive damages. Related to this issue is Defendants' contention that the Court erred in allowing evidence of the parties' previous lawsuit. The Court finds that the evidence of the parties' prior lawsuit was relevant to Salisbury's state of mind regarding Plaintiff. Specifically, the evidence that Salisbury brought a frivolous lawsuit against Plaintiff in an effort to harass him was relevant to Salisbury's motive while acting as Mayor in 2003 and 2004.

In combination with the evidence of the prior lawsuit, Plaintiff presented testimony regarding Salisbury's actions as Mayor in 2003 and 2004 from which the jury could infer malicious intent. Plaintiff's evidence demonstrated that Salisbury terminated inspectors who approved permits for Plaintiff and ended the City's contract with firms who did not enforce the building code as he saw fit. In contrast, Salisbury's testimony generally denied that he had an improper motive. However, the jury was free to disbelieve Salisbury's testimony. Therefore, the Court cannot say that Plaintiff's evidence on this issue was not sufficient to support the jury's findings.

Based on the foregoing, the Court concludes that the evidence presented in this case was not so one sided that no reasonable jury could find for Plaintiff. Therefore, Defendants' Renewed Motion for Judgment as a Matter of Law must be denied. Furthermore, and for similar reasons, the Court concludes that the jury's verdict was reasonable in light of the evidence presented. As such, Defendants' request for a new trial must also be denied.

**B. Plaintiff's Motion for Attorney's Fees**

*1. Legal Standard*

In any action or proceeding to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as party of the costs ...." 42 U.S.C. § 1988. In determining what constitutes a reasonable fee, the Supreme Court has held that the starting point "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is known as the lodestar method. The Supreme Court has further held that the fee applicant must produce evidence "to justify the reasonableness of the requested rate." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). In *Northcross v. Board of Education*, the Sixth Circuit held that the district court should look to the

prevailing market rate to determine the reasonableness of the requested rate. *See Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Sixth Circuit has also stated:

> Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. Accordingly, "modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts.'"

*Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000).

### 2. Requested Amount

Plaintiff has requested attorney fees in the amount of $58,987.50 and costs of $1983.00. The request for attorney fees was based on 214.5 hours of work by Plaintiff's attorney, Mr. Smith, at $275.00 per hour. In support of this application, Mr. Smith has provided a sworn declaration and a client billing sheet that details the hours he worked on this case.

### 3. Plaintiff's Hourly Billing Rate was Unreasonable

Defendants challenge the fees as being excessive, pointing out that the requested fees exceed the jury's award of punitive damages in this case and that Plaintiff's counsel was continually tardy for court appearances. The Court agrees with Defendants that the requested amount of fees is excessive. Specifically, the Court disagrees with Plaintiff that the hourly rate of $275 is reasonable. The starting point for the Court's analysis involves finding a reasonable hourly rate by looking to the prevailing market rate. *See Northcross*, 611 F.2d at 638. It is Plaintiff's burden to justify the reasonableness of the requested rate. *See Hensley*, 461 U.S. at 433. In *Blum v. Stevenson*, the Supreme Court explained:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services

8

> by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate.

465 U.S. at 896, n.11. In the present case, Plaintiff has failed to satisfy his burden. Plaintiff has produced no evidence other than Mr. Smith's declaration that $275 per hour is reasonable to justify the reasonableness of this rate. The Court finds that Plaintiff has not satisfactorily shown that his attorney's billing rate is in line with the prevailing market rate. According to the State Bar of Michigan, Michigan attorneys with 30-39 years of experience, like Mr. Smith, charge and average of $180.00 per hour. *See* State Bar of Michigan 2003 Economics of Law Practice at 25.This Court applied this rate to suit involving 28 U.S.C. § 1983 that was resolved in January 2006, and was of greater complexity than the present case. *See American-Arab Anti-Discrimination Comm. v. City of Dearborn*, Case No. 03-70235, (E.D. Mich. January 30, 2006). However, according to the Michigan Bar survey, the average billing rate for attorneys in general practice was $155.00 per hour and the Court finds that Plaintiff has not adequately shown that his attorney's practice is specialized or unique. Further, the Court finds that contrary to Plaintiff's assertions, and unlike the Court's prior § 1983 cases, this case did not involve complex areas of law or complicated factual issues.

Finally, the Court finds that the quality of representation actually provided is an appropriate factor to consider when determining the reasonableness of an hourly rate. *See Blum*, 465 U.S. at 897 (stating "there may be circumstances in which the basic standard of reasonable rates multiplied by reasonably expended hours results in a fee that is either unreasonably low or unreasonably high"). In the present case, Plaintiff's attorney was consistently tardy for court proceedings and conferences, completely failed to prepare appropriate jury instructions as ordered by the Court, and based on the Court's experience, was generally unprepared. The Court finds that Plaintiff has not provided

9

sufficient evidence of his attorney's legal background or skill level to justify his requested rate Thus, the Court concludes that a rate of $150.00 per hour is more appropriate than that requested by Plaintiff.

For these reasons, and also based on the Court's own experience with the billing practices within the Eastern District of Michigan, the Court finds that Plaintiff's requested hourly billing rate is unreasonable. The Court will award Plaintiff's attorney at rate of $150.00 per hour pursuant to the average rates of the Michigan Bar Survey and pursuant to the Court's own experience in these matters. The Court finds this fee reasonable in light of the prevailing market rate, the nature of the issues involved in this suit, the result obtained, and counsel's performance.

### 4. *Number of Hours Expended by Plaintiff's Attorney was Excessive*

Defendants next challenge the number of hours Plaintiff's attorney expended on the case. It is the Court's role to review billing hours in order to determine whether these hours were "reasonably expended." *See Hensley*, 461 U.S. at 433. While hourly rates for experienced attorneys are supposed to reflect experience, the experienced attorney who is being compensated at a higher rate than the inexperienced attorney is expected to perform legal work in an "expedited manner." *See Lebron v. Washington Metro. Area Transit Auth.*, 665 F.Supp. 923, 927-29 (D.D.C. 1987). Furthermore, attorneys should not be awarded fees for work that is not "reasonably expended on the litigation." *See Webb v. Bd. of Educ.*, 471 U.S. 234, 242 (1985).

In light of these principles, the Court agrees with Defendants that certain hours were not reasonably expended. First, the Court was required to entirely draft the jury instructions in this case. Therefore, the Court finds that 3 hours for drafting jury instructions is unreasonable. Second, as an attorney with 30 years of experience, the Court finds that 15 hours researching and drafting a

complaint is unreasonable and will reduce these hours to 7.5 hours. Similarly, the Court finds that the 9 hours expended preparing the amended complaint that was virtually identical to the original complaint is unreasonable and will not consider these hours. Finally, the Court finds that hours expended prior to researching the original complaint, which total 13.5 hours, were not reasonably expended on the litigation and will not be considered in calculating the award. Therefore, the Court will reduce the number of hours by 28, from 214.5 to 186.5 hours.

*5. Calculated Fee Award*

Based on the billed hours reasonably expended by Plaintiff's attorney and based on the above determined reasonable billing rate, the Court will award a total of $27,975.00 for attorney fees.

## V.  CONCLUSION

The Court concludes that the evidence presented at trial was not so one sided that reasonable jurors could not differ as to their conclusions. Accordingly, the Court will not upset the jury's verdict in this case. Therefore,

IT IS ORDERED that Defendants' Renewed Motion for Judgment as a Matter of Law is DENIED and judgment be entered for the Plaintiff in accordance with the jury's verdict.

IT IS FURTHER ORDERED that Plaintiff be awarded attorney fees in the amount of $27,975.00 and $1983.00 in costs.

IT IS SO ORDERED.

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated:  May 3, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 3, 2007.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290